We're back on the record. The next case on the docket is County of Jackson and City of Carbondale v. Mediacom Illinois LLC Clause number 5-11-0350 And for Mediacom, the attendant, Chris Cinnamon, you may proceed sir. Good morning, your honors. Good morning, Mr. Simmel, Mr. Brenner. My name is Chris Cinnamon. I and my partner, H. Schmitter, here on behalf of Mediacom, may it please the court. We're reporting on a case of first impression. This involves the interpretation of a statute, an Illinois statute, enacted in 2007. A portion of the statute initially governs cable franchises, the legal relationship between the cable television operators and the municipalities they serve. Obviously, the case is important to the parties, but your decision here will go far beyond that. It will provide guidance to over 1,000 municipalities and over 100 cable operators that serve those municipalities. I've represented cable operators all my lawyering career. From that experience, I'd like to share a little perspective that may help put this case in context. Cable franchising historically has been a regulated transaction. Federal law, FCC regulations, and in many jurisdictions including Illinois, state laws impact the cable franchising process, permeating both the process and the terms and conditions of franchises, imposing a variety of obligations, restrictions, and conditions on both sides of the cable franchise. Cable franchise regulation has evolved over time. The first federal law governing cable franchises was enacted in 1984. Laws have evolved since then. The most recent FCC regulation governing franchises was amended in 2007, imposing additional restrictions on certain aspects of municipal activity on the cable franchising. That's the same year that the Illinois legislature enacted the statute before us today. As cable franchise law has changed, litigation has typically resulted over the interpretation of that law, and our case today, like I said, dynamic. While it's a case of first impression, our argument is it's a straightforward one. It's a matter of determining the legislative intent when they change the contract, right? You entered into a contract, you had to provide a customer service office, and the legislature said you got a choice, and that changed the way you function, because you don't have a customer service office anymore, right? Exactly, Your Honor. It's a straightforward case of statutory interpretation, applying well-established principles that this court has used frequently, including recently. Specifically, the portion of the statute that issued governs customer service standards. The legislature in 2007 created a new law mandating four customer service standards that, I quote from the statute, shall be included, end quote, in each cable franchise in the state. In the face of this statutory mandate, the trial court concluded that the two franchises that issue here did not need to include the four customer service standards specified by statute. On that point, the trial court erred, and we ask you to reverse. Why shouldn't the statute be viewed as something that the legislature was imposing as a minimum level? You must include one of these options. Your Honor, the answer to that question is answered by the plain language of the statute, and I'll quote. Each franchise entered into a municipality and community antenna television system shall include the customer service standards contained in Article 22 of the Public Utility Code. A franchise may not contain additional or different consumer service or privacy standards or exceptions. And this one didn't include anything additional or different, did it? It included one of the four options that are included in the statute? You know, that's the trial court's conclusion, that's the city and county's argument, but that deviates sharply from the express language of the statute. But doesn't your argument mean that regardless of any franchise contract that a cable provider has entered into, the cable provider has the sole option to always go to the least expensive option? The statute does provide a measure of flexibility in how cable operators can provide certain customer service functions. Yes, and there are certainly economic considerations involved in those decisions, but it's important to view this one section of Article 22 of the Public Utility Code in the context of the nine other pages of customer service obligations, privacy standards, and other obligations imposed on cable operators in the statute. So the legislature struck a balance between imposing significantly additional obligations on cable operators and franchises and a measure of flexibility in this particular area of customer service, whether maintain a local office or maintain payment centers or no cost return of equipment. Those are three of the four alternatives specified in the statute. While the cases are nearly identical, there's one distinction that's very important, and it is a temporal distinction. The city of Carbondale and Meany County entered into their franchise before June 30, 2007, the effective date of the statute. The county of Jackson and Meany County entered into their franchise after June 30, 2007, and that's important for our purposes of interpreting the statutes and seeing how the trial court got it wrong. So I want to focus on Carbondale. Back to the law. In 2007, the legislature enacted Article 22 of the Public Utility Code and then companion amendments to the municipal code and the county code that brought the Article 22 provisions into each franchise granted by municipality and the county. Article 22 specified customer service obligations applicable to each cable operator in each franchise. Now, why is the date of Carbondale's franchise important? Let me quote from the amendments to the municipal code. Each franchise entered into by municipality and a community-intended television system before June 30, 2007 shall be amended by this section to incorporate the penalty provisions and customer service and privacy standards and protections contained in Article 22. The provision goes on. And this is identical in the county code. Each franchise entered into by municipality and a community-intended television system shall include the customer service and privacy standards, plural, and protections contained in Article 22. A franchise may not contain different penalties for consumer or privacy standards or protections. So what you have is a clear, unequivocal mandate that franchises in effect before June 30, 2007, like the City of Carbondale's, shall be amended to include the Article 22 customer service standards. So if a franchise didn't include any of those customer service options, it would be amended such that one of them would have to be included. You would agree with that, at least, right? Your Honor, not quite. If a franchise did not include – a pre-June 30, 2007 franchise did not include any customer service standards, it would be amended to include all four. The legislature said customer service standards from Article 22. They used the plural. And Article 22, as we'll get to now, contains four customer service standards presented in the alternative. I want to turn now to the – Well, they're presented in the alternative, which means you'd have to provide one of those, is my point. I think that deviates from the statutory language, Your Honor. It says it shall include the customer service standards. The statute does not say that it shall include one of the customer service standards in 22, or that it will include two of the customer service standards from Article 22. It says it will include the customer service standards from Article 22. The legislature was very clear. Maybe I'm confused. So you're saying that if you entered into a franchise before the Decadentity Act, which didn't provide any of those options, you're saying then, after the Act was passed, you would have had to provide all four? All four of those standards would be incorporated in that franchise. But let's turn to Article 22 now and see how the legislature set it up as alternatives. This is Section 501B3 of Article 22. It goes on for 30 lines. Let me paraphrase the sections and focus on the structure. The statute says the cable or video providers shall, colon, Romanet 1, maintain a customer service facility in the municipality, semicolon, Romanet 2, provide bill payment centers in the municipality, semicolon, Romanet 3, provide collection boxes for payment of return of equipment or address for payment, semicolon, I quote now, or, end quote, Romanet 4, provide an address for payment corresponding to a no-cost method and a no-cost method of return of equipment. So we've got the customer service standards in Article 22 are framed up this way. That the cable operator shall, Romanet 1, Romanet 2, Romanet 3, or Romanet 4, and then through the municipal and county code amendments, that whole package of alternatives shall be incorporated into each franchise. And in the case of Carbondale, that franchise shall be amended to include that package. And Your Honor, because the legislature has used the plural in referencing customer service standards, and because the legislature used or in presenting the alternative, the whole package comes in. And I think- And you read it to say the cable provider shall, at its sole option, provide one of those. It does provide a measure of flexibility. I don't have those words, but it does, it's presented as an alternative. And I think the job of interpreting these is pretty much laid out in Judge Wexton's opinion in Barnaby Park, 2010 opinion that involved interpretation of provisions of the Sports Volunteer Act. And let me quote from that opinion. The fundamental role of statutory construction is to ascertain and give effect to legislative intent. The best indication of legislative intent is a statutory language, given its plain and ordinary meaning. Where the language is clear and unambiguous, we must apply the statute without further aid to statutory construction. And one other decision was Judge Goldenhurst's decision, Judge Welch, you were on that. It's Siborowski v. Allworth, a 2009 decision. And this is a case addressing venue provisions of the Illinois Marriage and Dissolution Act, a statute that specifies two alternative choices of venue using or. This is what the court said. The fundamental role of statutory interpretation is to ascertain and give effect to the legislature's intent. Where the language of the statute is clear, we may not read into it exceptions that the legislature did not express, and we will give the statute effect as written. As used in its ordinary sense, the word or is disjunctive and connotes an alternative. Now from there, and those are well-established rules of statutory construction in Illinois. From there, let's go to the trial court decision. The trial court did not address the statutory mandate that the city of Carbondale's franchise shall be amended. The trial court blew past it, and on page 5, we get to where the trial court ended up. In this case, however, the franchise agreements do not contain different penalties for consumer service and privacy standards than those found in the Public Utilities Act. Instead, the franchise agreements contain one of the customer service standards specifically listed in the Act, end quote. Reading on, quote, considering the statutory language, the parties did not choose a different standard. They clearly chose one of the standards permitted by the Act, end quote. So with respect to Carbondale, the trial court ignored the mandate that the franchise be amended to include all the customer service alternatives in Article 22. And when you follow the plain language of the statute, and you apply the canvass of statutory construction articulated by this court, you can't apply it from here. I'm just trying to understand here, but if we accept your argument, what you're saying is that in negotiating a franchise agreement with a municipality, whether it be a city or a county, this is something you don't even negotiate then, because it means nothing. The statute provides that the payment provider determines which of these customer service options are provided. In other words, any negotiation to put it in there would just be void. There are other areas where municipalities and cable operators can negotiate in a franchise. The legislature stepped in here and said, going forward, these are the four customer service alternatives, and I'll use their language, that shall be included in each franchise. Okay, so let's say Mediacom and Charter are vying for Carbondale's business. Carbondale can't negotiate with one or the other. One says we're willing to provide an office in Carbondale if you give us a franchise. They can't do that. The legislature has determined otherwise. What would be the public policy purpose behind that, behind not allowing a municipality to negotiate for some higher level of customer service for their inhabitants? We would argue that when the statutory language is so clear, you don't really need to get the public policy, but let's do that. The public policy underlying the entirety of Article 22 is that the state is stepping in and mandating a range of customer service obligations, privacy protections, penalty provisions that apply to all franchises in the state, imposing a significant measure of standardization on what before that was a much less standardized legal relationship between cable operators and franchise employees, municipalities. The public policy reason has a couple of components. One is to strengthen, in all franchises across the state, the customer service protections, privacy protections, penalty provisions, and authorities of municipalities. And the other, insofar as the section that we're dealing with, provides just a measure of flexibility. And while in a case like Carbondale, it changes the deal, and the legislature has the authority to change a deal, and cable franchise regulation over the years has changed deals that have been in place, but it also, on the other side of this deal, changes any number of cable franchises that do not have customer service obligations in them and drops the whole set, increasing the burden on the cable operator. So the policy is the legislature struck a balance between uniformity and economics. My problem is, going forward, I think that you can make any changes with a new contract that you want to make, but if you make a contract, the legislature says, well, here's the new legislation, but you've already entered into a contract, you get to change it? You get to change it going forward with the customer that you made the agreement with? So you enter into an agreement, the legislature changes the law going forward, and now you say you can change it going backwards? Your Honor, I understand the question, and it's answered by the legislature's language. Okay. The contract shall be amended to include the customer service standards. This is not an immediate kind of change in the deal. This is the General Assembly changing the deal, and they have the authority to do that. I mean, this is not a constitutional claim by the cities against the statute. This is a claim of breach based on a provision in the City of Carbondale's franchise that was amended by statute. Okay. I know you haven't got to the County of Jackson yet. Yeah. But the legislation was already in place when you then entered into the franchise with the county and said, we agree, we'll keep the office. So you're saying you couldn't do that? And that's a distinction. In the case of the City of Carbondale, you've got clear amendment language in the statute dropping the four customer service alternatives down into the franchise. But in the case of Jackson County, while you don't have the amendment, you've got the clear mandate of the legislature that each franchise shall include the customer service standards of Article 22. Mediacom and the county didn't do that. So an attempt to enforce a contract provision that conflicts with statute is void. And we've got both the city and county cite to some freedom of contract cases. But we think a better case to use is the Deloitte Supreme Court case, Springfield Metropolitan Auditorium Authority v. Castle. It's a 1981 case we cite in our brief. It involved a financing arrangement between state agencies. The contract provided for crediting interest on an account that held bond proceeds to one of the agencies. The plaintiff sued, claiming that conflicted with the authorizing statute. The trial court upheld the contract. The Fourth District Court of Appeals reversed, holding that the contract provision dealing with the arrangement for interest conflicted with provisions of the authorizing statute. And the Supreme Court upheld the Court of Appeals in overturning the trial court. Now, the opinion recognizes that the parties bargained for the contract provision, even quotes from the record some of their negotiations. But because of the conflict with statute, the Supreme Court included, the Court of Appeals and the Supreme Court concluded the contract provision was, I quote, invalid and unenforceable, end quote. You read the same result here. The parties bargained for provision that conflicts with the statute. Now, what to do with it is a little different. In Carbondale's case, you should reverse holding that the franchise was amended and that there is no breach because it may be composed as local office. In the case of the county, it's a little different. We don't have express amendment. What we have is a franchise whose customer service provisions conflict with the statute. They should not be able to enforce it. You should reverse the trial court's decision on that. Thank you, sir. You'll have an opportunity for rebuttal. Thank you. And I'm not sure who's going first. Mr. Brenner. Good morning, justices, and good morning, counsel, all counsel. This is a very simple breach of contract case. The facts are simple, and they're not contested. The county believes there's only a few salient fact points for this court to consider to reach its determination. Number one, Medecon initially approached the county to negotiate a successor cable TV franchise agreement. We began the negotiations. Number two, in 2007, the general assembly passed this public act 95-009, which included section 22-501 of the statute in question here, laying out four options for a cable video operator, one of which, of course, mandates that a cable TV operator shall maintain a customer service facility within the boundaries of a unit of local government. That's one of the options. But public act 95-009 also inserts the limitation that the customer service standards must be part of a franchise agreement and that the agreement cannot contain different penalties for customer service standards and protection. But it goes further than that. Public act 95-009 also, for the first time, allowed cable television operators the opportunity to negotiate a franchise that would affect the county of Jackson with the state of Illinois. They could have effectively bypassed the county call together. Rather than do that, they continued the negotiations with the county. Number three, Medi-Cal continued negotiations with the county after the new act was passed, even though it is undisputed that the continuation of the customer service facility wasn't issued during the negotiations. Medi-Cal never expressed any objection to the continuation of that clause in the county's cable television franchise. Number four, in 2009, nearly two years after the passage of public act 95-009, the parties executed the franchise agreement that contains section 9 of the county franchise agreement and stated that Medi-Cal shall continue to maintain and provide a local customer service center in Jackson County and be open during normal business hours. Fifth and finally, several months later, in early 2010, Medi-Cal closes the customer service center in Jackson County and moves it to Williamson County. Other than not allowing Medi-Cal to pick and choose at any time which of the four options under section 22-501 of the Utility Act that Medi-Cal will abide, our franchise agreement is in no way different from the state statute. Medi-Cal made their choice under section 22-501 which of the four options it wanted, and it expressed that decision in section 9 of the county franchise agreement. Section 22-501 does not say that the parties cannot agree to additional terms or standards beyond those stated in that section. Indeed, as we have argued in our brief, public act 95-009 also declared that units of local government had some decision in how their public right-of-ways are to be used. Clearly, section 22-501 cannot be interpreted to mean that the parties cannot freely contract with one another on any terms they believe beneficial to their situations. Medi-Cal, of course, believes they cannot be limited in their options, even if they contractually negotiated them away. If you follow Medi-Cal's argument that they cannot be so restrained that they can pick and choose any of the four customer service options any time they want, daily, monthly, weekly, without getting any notice anywhere. It's incredibly hard for the county to believe that this was the intent of the general assembly, as we believe this leads to absurd results. In Medi-Cal's reply brief to the county's request for a summary judgment in the circuit court, and in this court, they have raised the argument that a contract term in violation of a state statute is void and unenforceable. We maintain, however, this is not the law. As we have discussed in our brief, the Illinois Supreme Court has stated the rule, and it simply is that the courts are going to respect the parties' freedom to contract and avoid overturning negotiated contract terms unless they are clearly, clearly contrary to public policy or their interest to the general public. This is Medi-Cal's burden, not ours. They raised the argument, they have the burden of going forward with that. The county really believes it's up to this court, in your style of discretion, to determine whether or not our Section 9 and our franchise agreement is enforceable. It is clear, however, there is no automatic determination or bright-line rule that any given contract term will violate public policy if this or that is present. It all depends on the facts and circumstances of each case, and that has been expressed by our Illinois Supreme Court. We believe there is nothing in Section 22-501 that prevents the parties from negotiating one or any number of the four customer service options. The parties negotiated the contract in good faith. The intent of the parties is expressed in Section 9 of the county franchise agreement. Medi-Cal has simply breached the agreement and is now claiming that provision they agreed to cannot be enforced. And so the county is left with no choice but to seek its contractual remedies, which, of course, we have done. For all these reasons, we request that this court affirm the Supreme Court's judgment. I would like to defer my time to the City Attorney, if I may. All right. And Mr. Kimmel, you may proceed. May it please the Court. I am Mike Kimmel, and I am the City Attorney for Carpenter. Let me address a couple of things that MediaCom brought up in their argument. As you pointed out, we do have a contract which predates the statute. The statute clearly says that each statute or each contract will be amended to include. Now, one of the four options, and as MediaCom has said on several occasions, disjunctive. And as you heard this morning, the two arguments this morning were kind of interesting to see. I'll try to put them together, the prior one with Amber and this one. There again is a disjunctive. What that means is they can choose one of the four, and I agree with that, and I have a problem with that. So the city had to have our contract, quote, amended to include one of the four, but we already had one of the four. We already had number one, B3, small i, double i, et cetera. Now, maybe there is one or two words different, but what both the state statute and the Carpenter contract says is they shall maintain an office in the governmental entity that is disfranchising, in the city of Carpenter. That's exactly what I said. So I would submit that the contract as amended was previously written that way. When legislatures do turn around and pass statutes that say they affect prior contracts, obviously we get into a constitutional question of the right to contract, but I don't really think that's necessary here because I think the legislature said we could do exactly what we had agreed to do. Now, even if this court were to rule that our agreement is completely void, which I submit would be in total opposition to Illinois Supreme Court decision, the Phoenix case, which I cited, which was in April of last year, clearly says that we should follow contracts, and they have a burden to overturn that, and they haven't reached that, but even if you were to do that, I would submit that the city of Carbondale is actually a third-party beneficiary of the county contract because the county contract says they will continue to operate the office within the jurisdiction of the county, which also happens to be within the jurisdiction of the city, that they already have. So either way, either as a third-party beneficiary or under our contract, I would submit contracts clearly say they have to have an office in Carbondale, which they had when we negotiated our contract, which they had when the county negotiated the contract two years after the statute, and which they maintained for two and a half years after the statute. And this is where the real road comes, and if you take this case as other than a simple contract case and say it is a case of the first impression for this statute, then the meaning of the statute has to be that not only did the legislature give four options, they basically, as Justice Stewart pointed out, gave them the right to change whenever they wanted to on their whim at any time, which means they have no requirement because today we have an office. Well, we don't want an office. We want to have a post office, so we want to have a location for you to pay your bill. Tomorrow we change again. The customer is sitting there saying, what do I do? I don't have any benefit. This statute was actually entitled the Cable Customer Protection Law. It wasn't the Cable Operator Protection Law, and if you really believe and accept Mediacom's argument that they can choose to change any time they want to at any point between any of the four options on their whim that hour, that day, then you've basically said the statute says they have no requirement. We cannot put any requirement whatsoever to benefit the customer, and that is exactly 180 degrees out of what this statute was for. Judge Salveson did an amazing job. Actually, she did a wonderful job on this order. If you read the order through, I was just really impressed with it, and I almost stood on her order. And she looked at the legislative history, and she said, you know, this is to protect customers, and if we allow them on a whim to change, and that is what is required to accept Mediacom's argument, then there is no requirement, and that is not what the legislature wants. As she quoted a state legislature senator saying, this is supposed to be some of the best protection in the nation, and that's clearly not no protection. To accept Mediacom's argument, that's what this court would be required to do. To uphold the trial court, all you have to do is say, yes, contract law is fine. This contract is not against public policy. It is not against anything specifically stated in the statute. Nowhere does the statute say one of these options at any point under a whim of the company. It says you can select an option. We negotiated an option for an office. The county negotiated an option after the statute for an office in Carbondale. Mediacom negotiated that. Did the county negotiate for an office in Carbondale? Well, what actually I think they did, because what their contract says, they will continue the office that's the operation of the office. The existing office, okay. And if you read the language in that contract, continue means they were talking about the ones there, and clearly Carbondale lives in Jackson County. So they basically negotiated that. Mediacom had no problems with that for two and a half years after the statute. Had they come out right after the statute or even right after they negotiated and said, gosh, we've got an option and we don't like that option, maybe they'd have an argument. But to come into this court or the trial court two and a half years later and say, hey, we can do it whenever we want, which is what they did, that flies in the face of the statute, and it flies in the face of contract law, and clearly it is an argument which the trial court rejected and which I would submit this court must reject. Thank you. In response to the city and county's arguments, I think we need to go back to your decision involving BART. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent. The plain and ordinary meaning of the statute is the best indication of legislative intent. When that language is clear and unambiguous, you need to apply the statute as written. And here we have a statute that is a model of clarity. In the case of the city, the franchise shall be amended to include the customer service standards, plural, in Article 22. As we heard Mr. Kimmel argue for the city, their view is that that should be read to mean their franchise does not need to be amended because it includes one of the customer service standards. And that's not what the legislature said. Similarly, the county asked you to allow it to enforce a provision of a franchise that conflicts with the express mandate of the portion of the county code that brings down the Article 22 customer service standards. It says each franchise shall include the customer service standards of Article 22, plural. The crux of your argument is that word is plural. If it would have said one of the standards. Absolutely. So that's where your whole statutory interpretation argument comes from is the fact that it says standards shall include. It is amended to include the standards. That's what the plain language says. It does not say one of. It did not say otherwise negotiated by the parties. And it could have, but it doesn't. And the trial court missed it. The trial court missed the express amendment to the Carbondale franchise. And because of that, following your precedent in Vaughn v. Barton, you should reverse, and the same with the county. Its franchise should include all four of the customer service alternatives in Article 22. It does not. So that provision is unenforceable. It's contrary to statute. All right, thank you. Once again, thanks, all of you, for your excellent briefs and arguments. We'll take this matter under advisement and issue a decision in due course.